AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
## for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>SUBJECT DIGITAL DEVICE as further detailed in<br>Attachment A. | )<br>)<br>)<br>)<br>)<br>) | Case No.  MJ19-196 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A, attached hereto and incorporated herein.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 2252(a)(2); 2252 (a)(4)(B) | Receipt or Distribution of Child Pornography; and Possession of Child Pornography |

The application is based on these facts:
☑ See Affidavit of SA Hugo Quintero, attached hereto and incorporated herein.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Hugo Quintero, Special Agent, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 05/03/2019 _____          _____
*Judge's signature*

City and state:  Seattle, Washington          Brian A. Tsuchida, Chief United States Magistrate Judge
*Printed name and title*

USAO# 201801042

# AFFIDAVIT OF HUGO QUINTERO

STATE OF WASHINGTON        )

                           )    ss

COUNTY OF KING             )

I, HUGO QUINTERO, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so since December 2017.  I am currently assigned to a criminal squad within the Seattle Division of the FBI.  During my employment with the FBI, I have assisted in the investigation of various federal violations, to include organized crime.  I have attended the Federal Bureau of Investigation Special Agent Training course in Quantico, Virginia.  Because of my training and experience, I am familiar with methods of investigating criminal organizations, and have become familiar with some methods of operation of these entities, including, but not limited to their methods of communication.

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following digital device:  One Apple iPhone 8+, IMEI 356773083032872 (hereinafter referred to as "SUBJECT DIGITAL DEVICE"), more particularly described in Attachment A.  The applied-for warrant would authorize the forensic examination of SUBJECT DIGITAL DEVICE for the purpose of identifying electronically stored data particularly described in Attachment B.

3.      The SUBJECT DIGITAL DEVICE, among others, was seized by Renton Police Department officers pursuant to a King County Superior Court search warrant executed at the residence of Matthew Grabowsky (hereinafter "GRABOWSKY") on November 2, 2017, and is currently held in evidence by the Federal Bureau of Investigation at 1110 3rd Avenue, Seattle, Washington.

4.      On December 20, 2018, the Honorable Mary Alice Theiler, Western

District of Washington, issued a search warrant authorizing the examination of SUBJECT DIGITAL DEVICE, a GoPro HERO 3 camera, and an Apple MacBook Pro Laptop for evidence of violations of Title 18, United States Code, Section 48 (Animal Crush Videos).  MJ18-579 (W.D. Wa. December 20, 2018).[1]  This warrant, and the application in support thereof, are herein incorporated in their entirety and included as Attachment D to this warrant application.

5.      In my training and experience, I know that the SUBJECT DIGITAL DEVICE, and the forensic extraction thereof performed pursuant to MJ18-579, have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when they first came into law enforcement custody.

6.      Based on my training and experience, and the facts set forth in this affidavit, there is probable cause to believe that GRABOWSKY, and others known and unknown, have committed violations of Title 18, United States Code, Sections 2252(a)(2) (Receipt or Distribution of Child Pornography), and 2252(a)(4)(B) (Possession of Child Pornography).  There is also probable cause to search SUBJECT DIGITAL DEVICE described in Attachment A, and the forensic extraction thereof performed pursuant to MJ18-579, for evidence, instrumentalities, contraband, and fruits of violations of Title 18, United States Code, Sections 2252(a)(2) and 2252(a)(4)(B), as further described in Attachment B.

7.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  I have not included every fact known concerning this investigation.  I have set forth the facts that I believe are necessary for a fair determination of probable cause for the requested search

---

[1] I have completed my review of the GoPro HERO 3 camera.  It did not contain evidence of federal or state criminal violations.  I have not yet conducted a review of the Apple MacBook Pro Laptop.

SA QUINTERO AFFIDAVIT - 2
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    warrant.  When the statements of others are set forth in this affidavit, they are set forth in

2    substance and in part.

### SUMMARY OF PROBABLE CAUSE

4    8.    On January 3, 2019, the password for SUJBECT DIGITAL DEVICE was

5    obtained by law enforcement.  On the same day, Clay Long, Task Force Officer,

6    Regional Computer Forensics Laboratory, completed an extraction of SUBJECT

7    DIGITAL DEVICE.

8    9.    I began my review of the forensic extraction of SUBJECT DIGITAL

9    DEVICE on February 25, 2019.  Based upon the forensic extraction of SUBJECT

10   DIGITAL device, I know that the IMEI for SUBJECT DIGITAL DEVICE is

11   356773083032872.

12   10.    On April 19, 2019, while reviewing the forensic extraction of SUBJECT

13   DIGITAL DEVICE for violations of Title 18, United States Code, Section 48, I located

14   an image of suspected child pornography.  Specifically, the image depicted what

15   appeared to be a pre-pubescent female performing oral sex on either a male human or

16   male canine.

17   11.    The file path for the image was:

18   253fd89b3003a76ebf249b753b672d66d612852f_files_full.zip/private/var/mobile/
     Containers/Shared/AppGroup/752CB178-4E05-44EB-9322-
19   EAB7BDD7AB9D/.ThreemaData_SUPPORT/_EXTERNAL_DATA/06C8EE23-
20   2017-43E4-AFE1-1068DFB2D0E1.

21   12.    The image was imbedded in a Threema App[2] Chatroom group chat that

22   occurred on October 24, 2017, consisting of approximately twenty participants.  The

23

24   _____

25   [2] Based upon my training, experience, and a review of the Threema App webpage, I know that
     Threema App is an open-source, secure messaging application available for download and use on
26   Apple, Android, and Microsoft devices.  Among the advertised features of Threema App are:
     guaranteed privacy - Threema is designed to generate as little data on servers as technically
27   possible; full anonymity - you are not forced to provide any personal information (such as your
     phone number or email address) in order to use Threema, and comprehensive encryption – with
28   Threema all your communications are end-to-end encrypted – not only text messages and voice

1   "owner/organizer" of the chat was listed as "qpd," which based upon my investigation in

2   this case appears to be shorthand for GRABOWSKY's "cupid the deer" fursona.  The

3   image was sent by chat participant "Tangram."

4        13.        After the image of suspected child pornography was posted to the chat

5   string, "qpd" replied "hot damn" – though in the context of the chat it was unclear if

6   "qpd" was replying to the image of suspected child pornography, or another image of an

7   age indeterminate individual that appeared to have a either a human or canine penis in

8   their mouth.

9                                **CONCLUSION**

10       14.        Based on the foregoing, I believe there is probable cause that evidence,

11  fruits, and instrumentalities of violations of 18 U.S.C. §§ 2252(a)(2) (Receipt or

12  Distribution of Child Pornography), and 2252(a)(4)(B) (Possession of Child

13  Pornography), are stored on the SUBJECT DIGITAL DEVICE.  I therefore request that

14  the court issue a warrant authorizing a search of the listed SUBJECT DIGITAL DEVICE

15  for the items more fully described in Attachment B hereto, incorporated herein by

16  reference, and the seizure of any such items found therein.

17

18

19                                    _____
                                     HUGO QUINTERO
20                                   Special Agent, FBI

21       The above-named agent provided a sworn statement attesting to the truth of the

22  contents of the foregoing affidavit on this 3rd day of May, 2019.

23

24                                    _____
25                                   HON. BRIAN A. TSUCHIDA
                                     Chief United States Magistrate Judge
26

27  _____

28  calls but also group chats, media files, and even status messages.  *See* https://threema.ch/en/faq,
    accessed on April 24, 2019.

SA QUINTERO AFFIDAVIT - 4
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

### ATTACHMENT A
### Item To Be Searched

3

4

5

    a.     One Apple iPhone 8+ with IMEI 356773083032872.  The phone is dark gray/black in color.  At the time of seizure the phone was powered on.  The screensaver for the phone was a picture of GRABOWSKY's "Cupidthedeer" fursona;

6

7

8

9

10

11

12

13

14

15

16



17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B
### Items to be Seized

On the SUBJECT DIGITAL DEVICE listed in Attachment A, the following records, documents, files, or materials that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. §§ 2252(a)(2) (Receipt or Distribution of Child Pornography), and 2252(a)(4)(B) (Possession of Child Pornography):

1.　　　Any visual depiction of minor(s) engaged in sexually explicit conduct, in any format or media;

2.　　　Any correspondence, to include stored texts, chats, e-mails, or other digital communication stored on the device, identifying persons transmitting child pornography, or evidencing the transmission of child pornography, through interstate or foreign commerce, including by computer;

3.　　　Assigned device name and/or number, and any identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

4.　　　Stored list of recent received, sent, or missed calls;

5.　　　Stored contact information;

6.　　　Evidence of who used, owned or controlled the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history;

7.　　　Evidence of malware that would allow others to control the digital devices such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

8.　　　Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device(s);

9.　　　Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from a digital device;

ATTACHMENT B - 1
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      10.     Evidence of the times each digital device was used;

2      11.     Any other ESI from the digital devices necessary to understand how each

3  digital device was used, the purpose of its use, who used it, and when;

4      12.     Records of Internet Protocol (IP) addresses used; and

5      13.     Records of Internet activity, including firewall logs, caches, browser history

6  and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered

7  into any Internet search engine, and records of user-typed web addresses.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 2
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# ATTACHMENT D

CERTIFIED TRUE COPY
ATTEST: WILLIAM M. McCOOL
Clerk, U.S. District Court
Western District of Washington
By _____
Deputy Clerk

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   MJ 18 - 579 |
| SUBJECT DIGITAL DEVICES as further detailed in Attachment A. | ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Western_____ District of _____Washington_____
*(identify the person or describe the property to be searched and give its location)*:

See attachment A, which is attached hereto and incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before _____January 3, 2019_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____any U.S. Magistrate Judge in this district_____.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:   Dec 20, 2018
                                              2:30 pm

City and state:      Seattle, Washington

_____
*Judge's signature*

Mary Alice Theiler, U.S. Magistrate Judge
*Printed name and title*

USAO# 2018R01042

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

1

**ATTACHMENT A**
**Items To Be Searched**

2

3          a.      One Apple iPhone 8+ with no visible model or serial number.  The phone is

4    dark gray/black in color.  At the time of seizure the phone was powered on.  The
     screensaver for the phone was a picture of GRABOWSKY's "Cupidthedeer" fursona;

5

6

7

8

9

10          

11

12

13

14

15

16

17          b.      One GoPro HERO 3 camera with no visible model or serial number.  The

18    camera is silver and black in color; and

19

20

21

22          

23

24

25

26

27

28

ATTACHMENT A - 1
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4

c.  One Apple MacBook Pro laptop computer with model number A1297 and serial number C02H80ENDV11.  The laptop is dark gray/black in color with silver on the bottom.  The laptop has a kittylovesmonster.com sticker located on the top (middle) of the outside cover, a fuzz factory sticker on the outside cover, and a white Apple logo in the center of the outside cover.

5
6
7
8
9
10
11
12
13
14
15



16
17
18

Items "a" – "c" were seized from the residence of MATTHEW GRABOWSKY on November 2, 2017, during the execution of a King County Superior Court Search Warrant.  These devices are currently held in evidence at FBI Seattle, located at 1110 3rd Avenue, Seattle, Washington.

19
20
21
22
23
24
25
26
27
28

ATTACHMENT A - 2
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT B
### Items to be Seized

The following records, documents, files, or materials, in whatever form, including photographic form and electrical, electronic, and magnetic form that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 48 (Animal Crush Videos), including but not limited to:

1.  Any visual depiction of animals being tortured, mutilated, or killed in any format or media;

2.  Any visual depiction of humans engaged in sexually explicit conduct with animals in any format or media;

3.  Any correspondence, to include stored texts, chats, e-mails, or other digital communication stored on the device, identifying persons transmitting animal crush videos, or evidencing the transmission of animal crush videos, through interstate or foreign commerce, including by mail or by computer;

4.  Assigned device name and/or number, and any identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

5.  Stored list of recent received, sent, or missed calls;

6.  Stored contact information;

7.  Evidence of who used, owned or controlled the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history.

8  Evidence of malware that would allow others to control the digital devices such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

9.  Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device(s);

ATTACHMENT B - 1
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       10.    Evidence of counter-forensic programs (and associated data) that are

2  designed to eliminate data from a digital device;

3       11.    Evidence of the times each digital device was used;

4       12.    Any other ESI from the digital devices necessary to understand how each

5  digital device was used, the purpose of its use, who used it, and when;

6       13.    Records of Internet Protocol (IP) addresses used; and

7       14.    Records of Internet activity, including firewall logs, caches, browser history

8  and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered

9  into any Internet search engine, and records of user-typed web addresses.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 2
USAO# 2018R01042

AO 106 (Rev. 04/10) Application for a Search Warrant

DEC 20 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) | Case No. **MJ18 – 579** |
| SUBJECT DIGITAL DEVICES as further detailed in Attachment A. | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, which is attached hereto and incorported herein by reference.

located in the _____Western_____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 48 | Animal Crush Videos |

The application is based on these facts:

See Affidavit of SA Hugo Quintero, FBI, which is attached hereto and incorporated herin by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Hugo Quintero, Special Agent, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: _____12/20/2018_____

_____
*Judge's signature*

City and state: Seattle, Washington

Mary Alice Theiler, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT OF HUGO QUINTERO

STATE OF WASHINGTON      )

                                              )      ss

COUNTY OF KING              )

I, HUGO QUINTERO, a Special Agent with the Federal Bureau of Investigation, having been duly sworn, state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so since December 2017. I am currently assigned to a criminal squad within the Seattle Division of the FBI. During my employment with the FBI, I have assisted in the investigation of various federal violations, to include organized crime. I have attended the Federal Bureau of Investigation Special Agent Training course in Quantico, Virginia. Because of my training and experience, I am familiar with methods of investigating criminal organizations, and have become familiar with some methods of operation of these entities, including, but not limited to their methods of communication.

2.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of the following digital devices:

a.      One Apple iPhone 8+ with no visible IMEI or serial number. The phone is dark gray/black in color;

b.      One GoPro HERO 3 camera with no visible model or serial number. The camera is silver and black in color; and

c.      One Apple MacBook Pro laptop computer with model number A1297 and serial number C02H80ENDV11. The laptop dark gray/black in color with silver on the bottom;

(hereinafter collectively referred to as "SUBJECT DIGITAL DEVICES"), more particularly described in Attachment A. The applied-for warrant would authorize the forensic examination of SUBJECT DIGITAL DEVICES for the purpose of identifying

SA QUINTERO AFFIDAVIT - 1
USAO# 2018R01042

1   electronically stored data particularly described in Attachment B.

2        3.    The SUBJECT DIGITAL DEVICES were seized by Renton Police

3   Department officers pursuant to a King County Superior Court search warrant executed at

4   the residence of Matthew Grabowsky (hereinafter "GRABOWSKY") on November 2,

5   2017, and are currently held in evidence by the Federal Bureau of Investigation at 1110

6   3rd Avenue, Seattle, Washington.

7        4.    In my training and experience, I know that SUBJECT DIGITAL DEVICES

8   have been stored in a manner in which their contents are, to the extent material to this

9   investigation, in substantially the same state as they were when the devices first came

10   into law enforcement custody.

11        5.    Based on my training and experience, and the facts set forth in this

12   affidavit, there is probable cause to believe that GRABOWSKY, and others known and

13   unknown, have committed violations of Title 18, United States Code, Section 48 (Animal

14   Crush Videos).  There is also probable cause to search the digital devices described in

15   Attachment A for evidence, instrumentalities, contraband, and fruits of violations of Title

16   18, United States Code, Section 48, as further described in Attachment B.

17        6.    The facts in this affidavit come from my personal observations, my training

18   and experience, and information obtained from other agents and witnesses.  I have not

19   included every fact known concerning this investigation.  I have set forth the facts that I

20   believe are necessary for a fair determination of probable cause for the requested search

21   warrant.  When the statements of others are set forth in this affidavit, they are set forth in

22   substance and in part.

23           **SUMMARY OF PROBABLE CAUSE**

24        7.    On October 26, 2018, the Honorable Mary Alice Theiler, Western District

25   of Washington, issued a search warrant authorizing the examination of seven digital

26   devices seized from either the residence of MATTHEW GRABOWSKY on November 2,

27   2017, or the person of MATTHEW GRABOWSKY on August 31, 2018.  MJ18-495

28   (W.D. Wa. October 26, 2018).  This warrant, and the application in support thereof, are

SA QUINTERO AFFIDAVIT - 2
USAO# 2018R01042

1  herein incorporated in their entirety and included as Attachment C to this warrant

2  application.

3        8.     On or about November 14, 2018, FBI SA Hugo Quintero realized that there

4  was an error in the description of one of the devices detailed in MJ18-495.  Specifically,

5  SA Quintero realized that item "3a," originally described as "One Apple iPhone 7 with

6  no visible model number," was in fact "One Apple iPhone 8+ with no visible model or

7  serial number."  This device is now correctly described herein and within Attachment A.

8        9.     Furthermore, though placed in a queue to be searched by FBI Computer

9  Analysis and Response Team, three of the digital devices detailed in MJ18-495 were not

10  searched prior to November 9, 2018, *i.e.*, the date by which MJ18-495 was to be

11  executed.  These devices were items "3a," "3b," and "3d" in MJ18-495.

12       10.   As detailed in Paragraph 12 below, this affidavit makes clear that law

13  enforcement intends to execute this warrant by placing SUBJECT DIGITAL DEVICES

14  into a queue for imaging by appropriately trained personnel.  As such, the actual imaging

15  of SUBJECT DIGITAL DEVICES may occur more than fourteen days after this warrant

16  has been issued.

17                **SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

18       11.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

19  Rules of Criminal Procedure, the warrant I am applying for will permit imaging or

20  otherwise copying all data contained on SUBJECT DIGITAL DEVICES, and will

21  specifically authorize a review of the media or information consistent with the warrant.

22       12.     Furthermore, due to the length of time and specialized skill required to

23  access and appropriately analyze SUBJECT DIGITAL DEVICES, I intend to execute the

24  warrant in this case by placing these devices in a queue with law enforcement personnel

25  within fourteen days of the signing of this warrant in order to have those specialized

26  techniques employed.

27       13.     In accordance with the information in this affidavit, law enforcement

28  personnel will execute the search of SUBJET DIGITAL DEVICES as follows:

SA QUINTERO AFFIDAVIT - 3
USAO# 2018R01042

a.   **Securing the Data**

i.   In order to examine the ESI in a forensically sound manner, law enforcement personnel with appropriate expertise will attempt to produce a complete forensic image, if possible and appropriate, of SUBJECT DIGITAL DEVICES.[1]

ii.   Law enforcement will only create an image of data physically present on or within the computer or storage medium. Creating an image of the computer or storage medium will not result in access to any data physically located elsewhere. However, if the computer or storage medium has previously connected to devices at other locations, it may contain data from those other locations.

b.   **Searching the Forensic Images**

i.   Searching the forensic images for the items described in Attachment B may require a range of data analysis techniques. In some cases, it is possible for agents and analysts to conduct carefully targeted searches that can locate evidence without requiring a time-consuming manual search through unrelated materials that may be commingled with criminal evidence. In other cases, however, such techniques may not yield the evidence described in the warrant, and law enforcement may need to conduct more extensive searches to locate evidence that falls within the scope of the warrant. The search techniques that will be used will be only those methodologies, techniques and protocols as may reasonably be expected to find, identify, segregate and/or duplicate the items authorized to be seized pursuant to Attachment B.

---

[1] The purpose of using specially trained computer forensic examiners to conduct the imaging of digital devices or other electronic storage media is to ensure the integrity of the evidence and to follow proper, forensically sound, scientific procedures. When the investigative agent is a trained computer forensic examiner, it is not always necessary to separate these duties. Computer forensic examiners often work closely with investigative personnel to assist investigators in their search for digital evidence. Computer forensic examiners are needed because they generally have technological expertise that investigative agents do not possess. Computer forensic examiners, however, often lack the factual and investigative expertise that an investigative agent may possess on any given case. Therefore, it is often important that computer forensic examiners and investigative personnel work closely together.

SA QUINTERO AFFIDAVIT - 4
USAO# 2018R01042

## **CONCLUSION**

14.     Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 48 (Animal Crush Videos), are located in the SUBJECT DIGITAL DEVICES, as more fully described in Attachment A to this Affidavit.  I therefore request that the court issue a warrant authorizing a search of the SUBJECT DIGITAL DEVICES for the items more fully described in Attachment B and the seizure of any such items found therein.


HUGO QUINTERO
Special Agent, FBI

SUBSCRIBED AND SWORN before me this 20th day December, 2018.


HON. MARY ALICE THEILER
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

2

## ATTACHMENT A
### Items To Be Searched

3

   a.      One Apple iPhone 8+ with no visible model or serial number.  The phone is

4

dark gray/black in color.  At the time of seizure the phone was powered on.  The

screensaver for the phone was a picture of GRABOWSKY's "Cupidthedeer" fursona;

5

6

7

8

9

10

11

12



13

14

15

16

17

   b.      One GoPro HERO 3 camera with no visible model or serial number.  The

18

camera is silver and black in color; and

19

20

21

22



23

24

25

26

27

28

ATTACHMENT A - 1
USAO# 2018R01042

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1      c.     One Apple MacBook Pro laptop computer with model number A1297 and

2  serial number C02H80ENDV11. The laptop is dark gray/black in color with silver on the

3  bottom. The laptop has a kittylovesmonster.com sticker located on the top (middle) of the outside cover, a fuzz factory sticker on the outside cover, and a white Apple logo in

4  the center of the outside cover.



16      Items "a" – "c" were seized from the residence of MATTHEW GRABOWSKY on

17  November 2, 2017, during the execution of a King County Superior Court Search Warrant. These devices are currently held in evidence at FBI Seattle, located at 1110 3rd

18  Avenue, Seattle, Washington.

5
6
7
8
9
10
11
12
13
14
15
19
20
21
22
23
24
25
26
27
28

ATTACHMENT A - 2
USAO# 2018R01042

**ATTACHMENT B**
**Items to be Seized**

The following records, documents, files, or materials, in whatever form, including photographic form and electrical, electronic, and magnetic form that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 48 (Animal Crush Videos), including but not limited to:

1.      Any visual depiction of animals being tortured, mutilated, or killed in any format or media;

2.      Any visual depiction of humans engaged in sexually explicit conduct with animals in any format or media;

3.      Any correspondence, to include stored texts, chats, e-mails, or other digital communication stored on the device, identifying persons transmitting animal crush videos, or evidencing the transmission of animal crush videos, through interstate or foreign commerce, including by mail or by computer;

4.      Assigned device name and/or number, and any identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

5.      Stored list of recent received, sent, or missed calls;

6.      Stored contact information;

7.      Evidence of who used, owned or controlled the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history.

8      Evidence of malware that would allow others to control the digital devices such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

9.      Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device(s);

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1       10.    Evidence of counter-forensic programs (and associated data) that are

2 designed to eliminate data from a digital device;

3       11.    Evidence of the times each digital device was used;

4       12.    Any other ESI from the digital devices necessary to understand how each

5 digital device was used, the purpose of its use, who used it, and when;

6       13.    Records of Internet Protocol (IP) addresses used; and

7       14.    Records of Internet activity, including firewall logs, caches, browser history

8 and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered

9 into any Internet search engine, and records of user-typed web addresses.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# Attachment C

CERTIFIED TRUE COPY
ATTEST: WILLIAM M. McCOOL
Clerk, U.S. District Court
Western District of Washington

By _____ Deputy Clerk

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No.   **MJ 18 - 495** |
| SUBJECT DIGITAL DEVICES as further detailed in | ) | |
| Attachment A. | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

   An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Western _____ District of _____ Washington _____
*(identify the person or describe the property to be searched and give its location)*:

   See attachment A, which is attached hereto and incorporated herein by reference.

   I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

   See Attachment B, which is attached hereto and incorporated herein by reference.

   **YOU ARE COMMANDED** to execute this warrant on or before _____ November 9, 2018 _____ *(not to exceed 14 days)*
   ☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

   Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

   The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____ any U.S. Magistrate Judge in this district _____ .
                                                                        *(United States Magistrate Judge)*

   ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*.
   ☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   Oct 26, 2018
                        10:00 AM                        _____
                                                              *Judge's signature*

City and state:     Seattle, Washington              Mary Alice Theiler, U.S. Magistrate Judge
                                                              *Printed name and title*

USAO# 2018R01042

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

### Certification

        I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____                    _____
                                                        *Executing officer's signature*

                                                      _____
                                                        *Printed name and title*

## ATTACHMENT A
### Items To Be Searched

a.    One Apple iPhone 7 with no visible model or serial number.  The phone is dark gray/black in color.  At the time of seizure the phone was powered on.  The screensaver for the phone was a picture of GRABOWSKY's "Cupidthedeer" fursona;



b.    One GoPro HERO 3 camera with no visible model or serial number.  The camera is silver and black in color;



ATTACHMENT A - 1
USAO# 2016R00454

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1      c.    One Apple MacBook Pro laptop computer with model number A1181.  The

2  laptop is black in color.  The laptop has a sticker on the upper left corner on the outside

3  cover, and a sticker on the lower left inside corner;



14      d.    One Apple MacBook Pro laptop computer with model number A1297 and

15  serial number C02H80ENDV11.  The laptop is dark gray/black in color with silver on the

16  bottom.  The laptop has a kittylovesmonster.com sticker located on the top (middle) of

the outside cover, a fuzz factory sticker on the outside cover, and a white Apple logo in

17  the center of the outside cover;



ATTACHMENT A - 2
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

e.      One Lenovo laptop computer with model number 20349 and serial number CB32133607.  The laptop is black in color.  The laptop has a sticker (paw print) on the upper left corner (outside cover), a sticker (animal) on the upper right corner (outside cover), and a blue piece of tape on the inside of the plastic case.  It appears the tape is covering a built-in camera.  The laptop also has a broken plastic case;

2

3

4

5



6

7

8

9

10

11

12

13

f.      One Apple iPad with Alaska Airlines tag # 352069071231533.  The Apple iPad is silver in color with a black outside cover.  The iPad has a black Apple logo on the back along with a sticker with MATTHEW GRABOWSKY's name.  There is also a sticker on the back that reads PROPERTY OF ALASKA AIRLINES;

14

15

16

17

18



19

20

21

22

23

24

25

26

27

28

ATTACHMENT A - 3
USAO# 2016R00454

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

g.    One Apple iPhone 8 Plus with no visible model number.  The phone is dark gray in color.



Items "a" – "f" were seized from the residence of MATTHEW GRABOWSKY on November 2, 2017, during the execution of a King County Superior Court Search Warrant.  These devices are currently held in evidence at RPD located at 1055 S. Grady Way, Renton, WA 98057.

Item "g" was voluntarily provided by MATTHEW GRABOWSKY at the conclusion of a proffer conducted in Seattle, WA, on August 31, 2018.  This device is currently held in evidence by HSI Seattle, located at 1000 2nd Ave., Suite 2300, Seattle, WA.

ATTACHMENT A - 4
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**
**Items to be Seized**

The following records, documents, files, or materials, in whatever form, including photographic form and electrical, electronic, and magnetic form that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 48 (Animal Crush Videos), including but not limited to:

1. Any visual depiction of animals being tortured, mutilated, or killed in any format or media;

2. Any visual depiction of humans engaged in sexually explicit conduct with animals in any format or media;

3. Any correspondence, to include stored texts, chats, e-mails, or other digital communication stored on the device, identifying persons transmitting animal crush videos, or evidencing the transmission of animal crush videos, through interstate or foreign commerce, including by mail or by computer;

4. Assigned device name and/or number, and any identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

5. Stored list of recent received, sent, or missed calls;

6. Stored contact information;

7. Evidence of who used, owned or controlled the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history.

8. Evidence of malware that would allow others to control the digital devices such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

9. Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device(s);

ATTACHMENT B - 1
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1         10.    Evidence of counter-forensic programs (and associated data) that are

2    designed to eliminate data from a digital device;

3         11.    Evidence of the times each digital device was used;

4         12.    Any other ESI from the digital devices necessary to understand how each

5    digital device was used, the purpose of its use, who used it, and when;

6         13.    Records of Internet Protocol (IP) addresses used; and

7         14.    Records of Internet activity, including firewall logs, caches, browser history

8    and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered

9    into any Internet search engine, and records of user-typed web addresses.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 2
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

AO 106 (Rev. 04/10) Application for a Search Warrant

CERTIFIED TRUE COPY
ATTEST: WILLIAM M. McCOOL
Clerk, U.S. District Court
Western District of Washington
By _____
Deputy Clerk

LODGED ___ RECEIVED

OCT 26 2018

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.  **MJ18 - 495**
SUBJECT DIGITAL DEVICES as further detailed in )
Attachment A. )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See attachment A, which is attached hereto and incorported herein by reference.

located in the _____ Western _____ District of _____ Washington _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | | Offense Description |
|---|---|---|
| 18 U.S.C. § 48 | Animal Crush Videos | |

The application is based on these facts:

See Affidavit of SA Ernest McGeachy, HSI, which is attached hereto and incorporated herin by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ernest McGeachy, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  __10/26/2018__

_____
*Judge's signature*

City and state:  Seattle, Washington

Mary Alice Theller, U.S. Magistrate Judge
*Printed name and title*

USAO# 2018R01042

1               **AFFIDAVIT OF ERNEST MCGEACHY**

2 STATE OF WASHINGTON      )

3                           )   ss

4 COUNTY OF KING           )

5      I, ERNEST MCGEACHY, a Special Agent with Immigration and Customs

6 Enforcement (ICE), Homeland Security Investigations (HSI), Seattle, Washington (WA),

7 having been duly sworn, state as follows:

8              **INTRODUCTION AND AGENT BACKGROUND**

9     1.     I am a Special Agent (SA) with the U.S. Department of Homeland Security,

10 Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI),

11 assigned to the Special Agent in Charge (SAC), Seattle, WA.  I have been a special agent

12 with HSI since October 2010.  HSI is responsible for enforcing the customs and

13 immigration laws and federal criminal statutes of the United States.  As part of my duties,

14 I investigate criminal violations relating to cybercrimes on the Dark Net, and human

15 smuggling and trafficking.  I have investigated and/or participated in many federal

16 criminal investigations involving human smuggling and trafficking, and cybercrimes on

17 the Dark Net.

18     2.     I am a graduate of the Federal Law Enforcement Training Center (FLETC)

19 Basic Criminal Investigator Training Program, the Immigration and Customs Special

20 Agent Training Program, and the Naval Criminal Investigative Service (NCIS) Special

21 Agent Training Program.  Before joining HSI, I worked as a special agent with NCIS,

22 and as a Customs and Border Protection officer. I have been a federal law enforcement

23 officer for over twenty years.  I hold a Bachelor's degree in Political Science from

24 Western Washington University.  I also hold a Master's Degree in Human Relations from

25 the University of Oklahoma.

26                   **PURPOSE OF AFFIDAVIT**

27     3.     I make this affidavit in support of an application under Rule 41 of the

28 Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

SA MCGEACHY AFFIDAVIT - 1
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the following digital devices:

      a.     One Apple iPhone 7 with no visible model or serial number.  The phone is dark gray/black in color;

      b.     One GoPro HERO 3 camera with no visible model or serial number.  The camera is silver and black in color;

      c.     One Apple MacBook Pro laptop computer with model number A1181.  The laptop is black in color;

      d.     One Apple MacBook Pro laptop computer with model number A1297 and serial number C02H80ENDV11.  The laptop dark gray/black in color with silver on the bottom;

      e.     One Lenovo laptop computer with model number 20349 and serial number CB32133607.  The laptop is black in color;

      f.     One Apple iPad with Alaska Airlines tag number 352069071231533.  The iPad is silver in color with a black outside cover; and

      g.     One Apple iPhone 8 Plus with no visible model or serial number.  The phone is dark gray in color;

(hereinafter collectively referred to as "SUBJECT DIGITAL DEVICES"), more particularly described in Attachment A.  The applied-for warrant would authorize the forensic examination of SUBJECT DIGITAL DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

      4.     The items to be searched are currently in the lawful possession of either Renton Police Department (RPD) or HSI.  The digital devices listed in paragraphs 3a – 3f were seized by RPD officers pursuant to a King County Superior Court search warrant executed at the residence of Matthew Grabowsky (hereinafter "GRABOWSKY") on November 2, 2017, and are currently held in evidence by RPD, located at 1055 S. Grady Way, Renton, WA.  The digital device listed in paragraph 3g was voluntarily provided to law enforcement by GRABOWSKY at the conclusion of a proffer conducted at the U.S.

SA MCGEACHY AFFIDAVIT - 2
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Attorney's Office, Seattle, WA, on August 31, 2018, and is currently held in evidence by
2  HSI Seattle, located at 1000 2nd Ave., Suite 2300, Seattle, WA.

3       5.     In my training and experience, I know that SUBJECT DIGITAL DEVICES
4  have been stored in a manner in which their contents are, to the extent material to this
5  investigation, in substantially the same state as they were when the devices first came
6  into the possession of RPD or HSI.

7       6.     Based on my training and experience, and the facts set forth in this
8  affidavit, there is probable cause to believe that GRABOWSKY, and others known and
9  unknown, have committed violations of Title 18, United States Code, Section 48 (Animal
10 Crush Videos).  There is also probable cause to search the digital devices described in
11 Attachment A for evidence, instrumentalities, contraband, and fruits of violations of Title
12 18, United States Code, Section 48, as further described in Attachment B.

13      7.     The facts in this affidavit come from my personal observations, my training
14 and experience, and information obtained from other agents and witnesses.  I have not
15 included every fact known concerning this investigation.  I have set forth the facts that I
16 believe are necessary for a fair determination of probable cause for the requested search
17 warrant.  When the statements of others are set forth in this affidavit, they are set forth in
18 substance and in part.

19                          **RELEVANT LAW**

20      8.     Title 18, United States Code, Section 48 – Animal Crush Videos – provides
21 in pertinent part:

22      (a) Definition.—In this section the term "animal crush video" means any
23      photograph, motion-picture film, video or digital recording, or electronic image
24      that—

25           (1) depicts actual conduct in which 1 or more living non-human mammals,
26           birds, reptiles, or amphibians is intentionally crushed, burned, drowned,
27           suffocated, impaled, or otherwise subjected to serious bodily injury (as
28           defined in section 1365 and including conduct that, if committed against a

SA MCGEACHY AFFIDAVIT - 3
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    person and in the special maritime and territorial jurisdiction of the United

2    States, would violate section 2241 or 2242); and

3        (2) is obscene.

4    (b) Prohibitions.—

5        (1) Creation of animal crush videos.—It shall be unlawful for any person to

6        knowingly create an animal crush video, if—

7            (A) the person intends or has reason to know that the animal crush

8            video will be distributed in, or using a means or facility of, interstate

9            or foreign commerce; or

10           (B) the animal crush video is distributed in, or using a means or

11           facility of, interstate or foreign commerce.

12       (2) Distribution of animal crush videos.— It shall be unlawful for any

13       person to knowingly sell, market, advertise, exchange, or distribute an

14       animal crush video in, or using a means or facility of, interstate or foreign

15       commerce.

16                                **PROBABLE CAUSE**

17   **Initial Investigation by Renton Police Department**

18       9.      On September 15, 2017, RPD Officer DesMet was dispatched to assist

19   Animal Control Officer McAskill with an animal cruelty case reported by A.S.[1] Upon

20   arrival at A.S.'s residence, Officer McAskill informed Officer DesMet that the reporting

21   party – R.S. – wanted to file a report of animal cruelty to her canine "Diamond" – an 8-

22

23

24   [1] Through the course of the investigation conducted by RPD, and ensuing prosecution of
     GRABOWSKY and Kevin Richards, R.S. has been interviewed by law enforcement on
25   numerous occasions. Most of R.S.'s claims have been corroborated by independent evidence or
     investigation by law enforcement. However, during the course of investigation, State of
26   Washington investigators have determined that at least one allegation made by R.S. was not
     substantiated. Furthermore, the Court should be aware that during the course of interviews with
27   law enforcement, R.S. has made admissions to conduct that would constitute felony violations
28   under both State and Federal law – to include the use of controlled substances.

1  year-old Siberian Husky.

2      10.    R.S. told the responding RPD officers that on or about August 19, 2017, a

3  mutual friend of R.S. and GRABOWSKY informed R.S. that he/she had viewed a video

4  of GRABOWSKY engaged in sexual acts with Diamond.  R.S. indicated that she did not

5  see the video until the evening of September 14, 2017.  R.S. indicated that upon

6  reviewing the video, she observed a male that she recognized as GRABOWSKY get onto

7  his hands and knees to engage in sexual acts with Diamond.  R.S. stated that the video

8  showed GRABOWSKY being mounted by Diamond and anally penetrated by Diamond.

9      11.    On September 15, 2017, R.S. emailed RPD Officer DeSmet two videos that

10  she had received from the mutual friend of R.S. and GRABOWSKY.  Det. Tolliver

11  subsequently viewed the videos to confirm the contents were what R.S. purported them to

12  be.  Upon review of the videos, Det. Tolliver confirmed that both videos were taken

13  inside a garage.  In the videos, Det. Tolliver can clearly identify R.S.'s Siberian Husky –

14  Diamond.  In one of the videos, Det. Tolliver can clearly identify GRAWBOWSKY

15  engaged in sexual activity with Diamond.  Specifically, Det. Tolliver observed

16  GRABOWSKY on all fours and naked from the waist down.  The video depicts Diamond

17  mounted on GRAWBOWSKY and apparently penetrating the anus of GRABOWSKY

18  for approximately one minute.

19      12.    On October 25, 2017, R.S. met with Det. Tolliver and King County

20  Prosecutors and provided a recorded statement.  During the interview, R.S. explained that

21  she and GRABOWSKY were part of a large group of "furry" enthusiasts.[2]  R.S.

22

23

---

24  [2] Based upon investigation in this case, I know that "furries," or "furry fandom," refers to a
community of individuals whose socialization revolves around animal characters with human

25  personalities and characteristics.  These animal characters – known as "fursonas" – are used for
role-playing in multi-person online games, in internet forums, and during in-person interactions.

26  Some "furries" have expensive suits – "fursuits" – created for these "fursonas."  In public, these
fursuits are worn during parties, parades, conventions, or charity events.  Based upon

27  investigation in this case, I know that these "fursuits" may also be worn as a part of sexual role-

28  playing.

1   explained that she had attended a number of "furry" conventions with GRABOWSKY

2   and her ex-boyfriend.  R.S. explained that GRABOWSKY has had multiple "fursonas,"

3   and that his current "fursona" was "Cupidthedeer," depicted below:



15      13.     R.S. further explained that some "furries" communicate with each other via

16   various social media sites.  Specifically, R.S. indicated that she believed that

17   GRABOWSKY and other "furries" communicated via the Telegram application ("app").[3]

18   Finally, R.S. indicated that she had received – via Telegram – thumbnails of the video of

19   GRABOWSKY engaged in sex acts with her dog Diamond.  A screenshot of this

20   Telegram thumbnail – taken from the phone of R.S. by State of Washington investigators

21   – is depicted below:

22   _____

23   [3] Based upon my training and experience, I know that Telegram is a cloud-based instant

24   messaging and voice over IP service developed by Telegram Messenger LLP, a privately held
     company registered in London, United Kingdom.  Telegram client applications are available for

25   Android, iOS, Windows Phone, Windows NT, MacOS, and Linux.  Telegram app users can send
     messages and exchange photos, videos, stickers, and audio files of any type.  The service

26   provides end-to-end encryption for voice calls, and optional end-to-end encrypted "secret" chats

27   between two online users.  In addition to being encrypted, the sender of a "secret chat" can set a
     self-destruct timer that will result in the chat session being erased from not only the sender's, but

28   also, the receiver's digital device.

SA MCGEACHY AFFIDAVIT - 6                              UNITED STATES ATTORNEY
USAO# 2018R01042                                      700 STEWART STREET, SUITE 5220
                                                        SEATTLE, WASHINGTON 98101
                                                              (206) 553-7970

14.     During the course of my investigation into this matter, I have viewed the videos of GRABOWSKY engaged in sexual acts with Diamond, and described in paragraph 11 above. I recognize the above image as a screenshot taken from this video. Furthermore, based upon a review of official photos and an in-person meeting with GRABOWSKY on August 31, 2018, I recognize the individual in the above picture to be GRABOWSKY.

**Renton Police Department Search Warrant and Arrest of Grabowsky**

15.     On November 2, 2017, RPD officers executed a King County Superior Court Search Warrant at GRABOWSKY's residence located 12327 SE 204th St., Kent, WA. At the time of the search, officers encountered GRABOWSKY and his father – J.F.G. Based upon information obtained through the course of this investigation, I know that GRABOWSKY had just moved into this residence with his domestic partner – R.D. R.D. was not present at the residence at the time of the search.

16.     During the search, RPD seized several items of investigative interest including several animal sex toys, multiple "fursuits" – to include the "Cupidthedeer" suit depicted in paragraph 12 above, and the digital devices detailed in paragraphs 3a-3f. GRABOWSKY was arrested and charged with Animal Cruelty in the First Degree. These charges are currently pending in King County Superior Court.

SA MCGEACHY AFFIDAVIT - 7
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**Evidence Provided by Grabowsky's Criminal Defense Attorney**

17.     In May 2018, GRABOWSKY provided – via his criminal defense attorney – King County Prosecuting Attorney's office with a Memorex 2GB thumbdrive containing a video that depicted the torture, mutilation, and killing of a dog. At the time that the video was provided, it was relayed that the individuals depicted in the video would buy dogs from Craigslist, torture and destroy them, and then take the dead dogs to roads where the perpetrators would run over the mutilated dogs to cover up the crime. Based upon discussions with the assigned Deputy Prosecuting Attorney, as well as the proffer with GRABOWSKY conducted on August 31, 2018, detailed below, I know that GRABOWSKY provided this video to King County authorities in an effort to resolve his King County Superior Court prosecution via a non-felony charge.

18.     In September 2018, I viewed the contents of the Memorex 2GB thumbdrive that GRABOWSKY provided to law enforcement via his attorney. The video depicts a black puppy – appearing to be a Labrador retriever – with a rope around its neck. For several minutes at the beginning of the video, an unidentified white male can be seen anally penetrating the black puppy with a dildo as well as his fingers. The same unidentified white male can then be seen placing tape around the mouth of the dog.[4]

19.     At approximately six minutes and forty seconds into the video, the same unidentified white male can be seen anally penetrating the dog with a large knife. One person can be heard saying, "Is it still tight?" Another male voice responds by saying, "Can't. It's too narrow. She's super tight." After the unidentified white male anally penetrates the dog with the large knife, he can be seen anally penetrating the dog with a sex toy (dildo). A male voice can be heard saying, "There it goes."

20.     With just over fifteen minutes into the video, the same unidentified white inserts a large knife into the abdomen section of the dog. The male then proceeds to cut

---

[4] Based on the brief comments made during the video, as well as periodic zooming in and out, there appears to be at least two people present during the filming of the video.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  off the right front leg of the dog and places the cut limb inside the dog's mouth. The

2  following brief comments can be heard in the background during this time: "It hurts"

3  (male #1). "I guess it hurts" (male #2). Additionally, one of the two male voices can be

4  heard saying, "Yeah. That's pretty disgusting." The same unidentified white male can

5  then be seen cutting off the right ear of the dog. Towards the end of the video, the

6  unidentified white male places both the dog's severed right front leg and the sex toy

7  inside the knife wound in the dog's abdomen. At the end of the video, a male voice says

8  "I'm done."

9       21.    The unidentified white male arms are visible during the filming. A blue

10  tarp was placed under the dog, and a wooden structure appeared to be in the background.

11  The entire video is 23:28 in length.

12  **Grabowsky Proffer on August 31, 2018**

13       22.    On August 31, 2018, GRABOWSKY provided a voluntary proffer

14  interview to law enforcement at the United States Attorney's Office in Seattle, WA.

15  Present at the proffer interview were federal and state prosecutors, federal law

16  enforcement agents, GRABOWSKY, and GRABOWSKY's attorney.

17       23.    During the proffer, GRABOWSKY stated he had previously been part of a

18  chat group on the mobile application "Kik" (hereinafter "Kik Group").[5] According to

19  GRABOWSKY, the Kik Group was comprised of 40 – 50 people, most of whom resided

20  in the Seattle area. According to GRABOSKY, the purpose of the Kik Group was to

21  discuss and share pictures and/or videos of humans engaged in sexual acts with animals.

22  GRABOWSKY indicated that the last time he accessed the Kik Group was in early

23

24  _____

25  [5] Based upon my training and experience, I know that Kik Messenger, commonly referred to as "Kik," is a free instant messaging app developed by the Canadian company Kik Interactive. The Kik Messenger app is available for iOS and Android operating systems. The Kik app uses a

26  smartphone's data plan or Wi-Fi to transmit and receive messages, photos, videos, sketches, mobile webpages, and other content. Unlike traditional messaging applications native to a

27  smartphone, Kik provides a level of user anonymity as a user account can be created without

28  providing an actual name and/or telephone number.

SA MCGEACHY AFFIDAVIT - 9
USAO# 2018R01042

1  November 2017, using the 64GB gray iPhone seized from his residence by RPD on

2  November 2, 2017, i.e., the digital device detailed in paragraph 3a.

3       24.    GRAWBOWSKY stated that he was a member of the Kik Group for a

4  maximum period of four months.  GRABOWSKY indicated that he knew some of the

5  individuals in the group, and in addition to Kik group chats, would send direct messages

6  to those with whom he had a personal relationship.  GRABOWSKY stated that he

7  thinks that he both viewed animal sex videos posted in the Kik Group and uploaded

8  animal sex videos – of himself – to the Kik Group.

9       25.    With respect to the thumbdrive containing the puppy mutilation video

10  detailed in paragraphs 18-21 above, GRABOWSKY stated that he first viewed the video

11  on a friend's computer in or about October 2017.  According to GRABOWSKY, this

12  viewing did not occur at his residence or on any of SUBJECT DIGITAL DEVICES.

13      26.    GRABOWSKY stated that he next viewed the video via Telegram

14  sometime after February 6, 2018.  GRABOWSKY indicated that the video had been

15  shared with him by the Telegram user "@Hidel_berg" (hereinafter "HIDEL").  The title

16  of the video shared by HIDEL was "Gushie" – GRABOWSKY recognized this as the

17  same title of the video that he had previously viewed on a friend's computer in October

18  2017.  GRABOWSKY stated that during a "secret chat" HIDEL told GRABOWSKY that

19  HIDEL was the person mutilating the dog in the video.  GRABOWSKY indicated that

20  this video was viewed on the on the digital device that is detailed in paragraph 3g, i.e.,

21  the iPhone GRABOWSKY voluntarily provided to law enforcement at the conclusion of

22  the proffer.

23      27.    GRABOWSKY stated that in or about May 2018, he went back to his

24  friend's house and downloaded the "Gushie" video onto a Memorex 2GB thumbdrive.

25  GRABOWSKY stated that he gave this thumbdrive drive to his lawyer, which was in

26  turn provided by GRABOWSKY's lawyer to the King County Prosecuting Attorney's

27  office.  GRABOWSKY denied any direct involvement with the production of the

28  "Gushie" video.

28.     In addition to HIDEL, GRABOWSKY indicated that he communicated with at least one other individual via Telegram who GRABOWSKY believed may be involved in the sexual abuse and/or torture of animals.  GRABOWSKY indicated that he met this person – C.S. – in 2013.

29.     GRABOWSKY indicated that he was introduced to C.S. by a common acquaintance who knew that GRABOWSKY and C.S. both liked to have sex with animals.  About six months after meeting C.S., GRABOWSKY learned that C.S. liked to film himself raping and torturing dogs.  GRABOWSKY stated that he viewed videos of C.S. engaged in sexual acts with animals at C.S.'s house.

30.     GRABOWSKY stated that a few days prior to August 31, 2018, i.e., the date of the proffer, C.S. had contacted GRABOWSKY via a secret chat on Telegram.  GRABOWSKY stated that he deleted the message without reading it.  GRABOWSKY indicated that C.S. usually only messaged him when there was "something to do," i.e., find a stray animal and/or have sex with an animal.

31.     According to GRABOWSKY, C.S. had asked GRABOWSKY to torture an animal with C.S. within the past year.  GRABOWSKY stated that C.S. often sent GRABOWSKY Craigslist advertisements of dogs that C.S. wanted GRABOWSKY to pick-up and bring to C.S.  GRABOWSKY understood that it was C.S.'s intent to have sex with and/or mutilate these animals.  GRABOWSKY denied torturing dogs with C.S., or agreeing to C.S.'s requests for GRABOWSKY to bring C.S. dogs from Craigslist.

32.     At the conclusion of the proffer session on August 31, 2018, GRABOWSKY voluntarily provided the digital device depicted in paragraph 3g to law enforcement.  With GRABOWSKY's permission, law enforcement placed the phone into airplane mode.  The phone is currently stored at HSI Seattle, located at 1000 2nd Ave., Suite 2300, Seattle, WA.

**Forensic Examination of Digital Memorex Thumbdrive**

33.     On September 5, 2018, SA Ernest McGeachy provided HSI Computer Forensic Analyst (CFA) Derek Quintanilla with the 2GB Memorex thumbdrive

1  containing the puppy mutilation video. CFA Quintanilla determined that the file path of
2  the video was "Root\Video\Warning-Graphic\Gushie.mpg" and that the video was copied
3  to the thumbdrive on May 14, 2018. No other forensic data, i.e., original production date
4  of the video, location where the video was produced, type of device on which the video
5  was produced, etc., was recovered during the forensic examination.

6  **TECHNICAL BACKGROUND**

7      34.    Based on my training and experience, I use the following technical terms to

8  convey the following meanings:

9      a.    Wireless telephone: A wireless telephone (or mobile telephone, or
10  cellular telephone) is a handheld wireless device used for voice and data communication
11  through radio signals. These telephones send signals through networks of
12  transmitter/receivers, enabling communication with other wireless telephones or
13  traditional "land line" telephones. A wireless telephone usually contains a "call log,"
14  which records the telephone number, date, and time of calls made to and from the phone.
15  In addition to enabling voice communications, wireless telephones offer a broad range of
16  capabilities. These capabilities include: storing names and phone numbers in electronic
17  "address books;" sending, receiving, and storing text messages and e-mail; taking,
18  sending, receiving, and storing still photographs and moving video; storing and playing
19  back audio files; storing dates, appointments, and other information on personal
20  calendars; and accessing and downloading information from the Internet. Wireless
21  telephones may also include global positioning system ("GPS") technology for
22  determining the location of the device.

23      b.    Digital camera: A digital camera is a camera that records pictures as
24  digital picture files, rather than by using photographic film. Digital cameras use a variety
25  of fixed and removable storage media to store their recorded images. Images can usually
26  be retrieved by connecting the camera to a computer or by connecting the removable
27  storage medium to a separate reader. Removable storage media include various types of
28  flash memory cards or miniature hard drives. Most digital cameras also include a screen

SA MCGEACHY AFFIDAVIT - 12
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  for viewing the stored images.  This storage media can contain any digital data, including
2  data unrelated to photographs or videos.

3        c.      Tablet:  A tablet is a mobile computer, typically larger than a phone
4  yet smaller than a notebook computer that is primarily operated by touching the screen.
5  Tablets function as wireless communication devices and can be used to access the
6  Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise.  Tablets
7  typically contain programs called apps, which, like programs on a personal computer,
8  perform different functions and save data associated with those functions.  Apps can, for
9  example, permit accessing the Web, sending and receiving e-mail, and participating in
10  Internet social networks.

11        d.      Internet:  The Internet is a global network of computers and other
12  electronic devices that communicate with each other.  Due to the structure of the Internet,
13  connections between devices on the Internet often cross state and international borders,
14  even when the devices communicating with each other are in the same state.

15      35.      I know, based on my training and experience, that smartphones, e.g., Apple
16  iPhones; tablets, *e.g.*, Apple iPads; and laptop computers have the capability to access the
17  Internet and store information, such as videos and images.  Additionally, I know, based
18  on my training and experience, that GoPro cameras can capture and store information,
19  such as videos and images.  Furthermore, an individual using a GoPro camera can film
20  animal crush videos and transfer the video to a laptop computer via USB cable or
21  removable media, and to smart phones or tables using a GoPro app.

22      36.      Based upon my knowledge, training, and experience in cybercrimes on the
23  Dark Net and human trafficking investigations, and the experience and training of other
24  law enforcement officers with whom I have had discussions, I know that computers and
25  computer technology have revolutionized the way in which images and videos are
26  collected, distributed, and produced.  Prior to the advent of computers and the Internet,
27  illicit images and videos, *e.g.*, child pornography, were produced using cameras and film,
28  resulting in either still photographs or movies.  The photographs required darkroom

SA MCGEACHY AFFIDAVIT - 13
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   facilities and a significant amount of skill in order to develop and reproduce the images.

2   As a result, there were definable costs involved with the production of these materials.

3   To distribute these images on any scale also required significant resources.  The

4   photographs themselves were somewhat bulky and required secure storage to prevent

5   their exposure to the public.  The distribution of these images was accomplished through

6   a combination of personal contacts, mailings, and telephone calls, and compensation

7   would follow the same paths.

8       37.   Based upon my knowledge, training, and experience in cybercrimes on the

9   Dark Net and human trafficking investigations, and the experience and training of other

10  law enforcement officers with whom I have had discussions, I know that illicit images

11  and videos can now be produced by using the average video or digital camera.  These still

12  and/or moving images can then be uploaded from the camera to the computer, either by

13  attaching the camera to the computer through a USB cable or similar device, or by

14  ejecting the camera memory card from the camera and inserting it into a card reader.

15  Once uploaded to the computer, the images can then be stored, manipulated, transferred,

16  or printed directly from the computer.  Images can be edited in ways similar to those by

17  which a photograph may be altered.  Images can be lightened, darkened, cropped, or

18  otherwise manipulated.  Producers of illicit videos can also use a scanner to transfer

19  printed photographs into a computer-readable format.  As a result of this technology, it is

20  relatively inexpensive and technically easy to produce, store, and distribute illicit videos.

21      38.   Based upon my knowledge, training, and experience in cybercrimes on the

22  Dark Net and human trafficking investigations, and the experience and training of other

23  law enforcement officers with whom I have had discussions, I know that the internet

24  allows any computer to connect to another computer.  By connection to a host computer,

25  electronic contact can be made to literally millions of computers around the world.  A

26  host computer is one that is attached to a network and serves many users.  Host

27  computers, including ISPs, allow email service between subscribers and sometimes

28  between their own subscribers and those of other networks.  Additionally, these service

SA MCGEACHY AFFIDAVIT - 14
USAO# 2018R01042

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

1   providers act as a gateway for their subscribers to the Internet. Having said that,

2   however, this application does not seek to reach any host computers. This application

3   seeks permission only to search SUBJECT DIGITAL DEVICES.

4       39.     A smartphone, tablet, or computer's capability to store images in digital

5   form makes them ideal repositories for illicitly produced videos. The size of the

6   electronic storage media (commonly referred to as a "hard drive") used in these digital

7   devices has grown tremendously within the last several years. For example, computers

8   with hard drive capacity of 1 terabyte are not uncommon. These drives can store

9   thousands of images at very high resolution. Magnetic storage located in host computers

10  adds another dimension to the equation. It is possible to use a video camera to capture an

11  image, process that image in a computer with a video capture board, and save that image

12  to storage elsewhere. Once this is done, there is no readily apparent evidence at the

13  "scene of the crime." Only with careful laboratory examination of electronic storage

14  devices is it possible to recreate the evidence trail.

15      40.     Based on my training and experience, and that of computer forensic agents

16  that I work and collaborate with, I know that every type and kind of information, data,

17  record, sound or image can exist and be present as electronically stored information on

18  any of a variety of computers, computer systems, smartphone, tablet, and other electronic

19  storage media. I also know that electronic evidence can be moved easily from one digital

20  device to another.

21      41.     Based on my training and experience, and my consultation with computer

22  forensic agents who are familiar with searches of computers, I know that in some cases

23  the items set forth in Attachment B may take the form of files, documents, and other data

24  that is user-generated and found on a digital device. In other cases, these items may take

25  the form of other types of data – including in some cases data generated automatically by

26  the devices themselves.

27      42.     Based on my training and experience, and my consultation with computer

28  forensic agents who are familiar with searches of computers, I believe that for SUBJECT

SA MCGEACHY AFFIDAVIT - 15
USAO# 2018R01042

1   DIGITAL DEVICES, there is probable cause to believe that the items set forth in

2   Attachment B will be stored in those digital devices for a number of reasons, including

3   but not limited to the following:

4            a.        Once created, electronically stored information (ESI) can be stored

5   for years in very little space and at little or no cost.  A great deal of ESI is created, and

6   stored, moreover, even without a conscious act on the part of the device operator.  For

7   example, files that have been viewed via the Internet are sometimes automatically

8   downloaded into a temporary Internet directory or "cache," without the knowledge of the

9   device user.  The browser often maintains a fixed amount of hard drive space devoted to

10  these files, and the files are only overwritten as they are replaced with more recently

11  viewed Internet pages or if a user takes affirmative steps to delete them.  This ESI may

12  include relevant and significant evidence regarding criminal activities, but also, and just

13  as importantly, may include evidence of the identity of the device user, and when and

14  how the device was used.  Most often, some affirmative action is necessary to delete ESI.

15  And even when such action has been deliberately taken, ESI can often be recovered,

16  months or even years later, using forensic tools.

17           b.        Wholly apart from data created directly (or indirectly) by user-

18  generated files, digital devices - in particular, a computer's internal hard drive - contain

19  electronic evidence of how a digital device has been used, what is has been used for, and

20  who has used it.  This evidence can take the form of operating system configurations,

21  artifacts from operating systems or application operations, file system data structures, and

22  virtual memory "swap" or paging files.  Computer users typically do not erase or delete

23  this evidence, because special software is typically required for that task.  However, it is

24  technically possible for a user to use such specialized software to delete this type of

25  information - and, the use of such special software may itself result in ESI that is relevant

26  to the criminal investigation.  HSI agents in this case have consulted on computer

27  forensic matters with law enforcement officers with specialized knowledge and training

28  in computers, networks, and Internet communications.  In particular, to properly retrieve

SA MCGEACHY AFFIDAVIT - 16
USAO# 2018R01042

1  and analyze electronically stored (computer) data, and to ensure accuracy and

2  completeness of such data and to prevent loss of the data either from accidental or

3  programmed destruction, it is necessary to conduct a forensic examination of the

4  computers.  To effect such accuracy and completeness, it may also be necessary to

5  analyze not only data storage devices, but also peripheral devices which may be

6  interdependent, the software to operate them, and related instruction manuals containing

7  directions concerning operation of the computer and software.

8  **SEARCH AND/OR SEIZURE OF DIGITAL DEVICES**

9  43.   Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the Federal

10  Rules of Criminal Procedure, the warrant I am applying for will permit imaging or

11  otherwise copying all data contained on SUBJECT DIGITAL DEVICES, and will

12  specifically authorize a review of the media or information consistent with the warrant.

13  44.   In accordance with the information in this affidavit, law enforcement

14  personnel will execute the search of SUBJET DIGITAL DEVICES as follows:

15  a.   **Securing the Data**

16  i.   In order to examine the ESI in a forensically sound manner,

17  law enforcement personnel with appropriate expertise will attempt to produce a complete

18  forensic image, if possible and appropriate, of the computer or storage medium.[6]

19  ii.   Law enforcement will only create an image of data physically

20  present on or within the computer or storage medium.  Creating an image of the computer

21

22

---

23  [6] The purpose of using specially trained computer forensic examiners to conduct the imaging of

digital devices or other electronic storage media is to ensure the integrity of the evidence and to

24  follow proper, forensically sound, scientific procedures.  When the investigative agent is a

trained computer forensic examiner, it is not always necessary to separate these duties.

25  Computer forensic examiners often work closely with investigative personnel to assist

investigators in their search for digital evidence.  Computer forensic examiners are needed

26  because they generally have technological expertise that investigative agents do not possess.

Computer forensic examiners, however, often lack the factual and investigative expertise that an

27  investigative agent may possess on any given case.  Therefore, it is often important that

computer forensic examiners and investigative personnel work closely together.

28

SA MCGEACHY AFFIDAVIT - 17
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  or storage medium will not result in access to any data physically located elsewhere.

2  However, if the computer or storage medium has previously connected to devices at other

3  locations, it may contain data from those other locations.

4        **b.**    **Searching the Forensic Images**

5              i.    Searching the forensic images for the items described in

6  Attachment B may require a range of data analysis techniques.  In some cases, it is

7  possible for agents and analysts to conduct carefully targeted searches that can locate

8  evidence without requiring a time-consuming manual search through unrelated materials

9  that may be commingled with criminal evidence.  In other cases, however, such

10  techniques may not yield the evidence described in the warrant, and law enforcement

11  may need to conduct more extensive searches to locate evidence that falls within the

12  scope of the warrant.  The search techniques that will be used will be only those

13  methodologies, techniques and protocols as may reasonably be expected to find, identify,

14  segregate and/or duplicate the items authorized to be seized pursuant to Attachment B to

15  this affidavit.

16  //

17  //

18  //

19

20

21

22

23

24

25

26

27

28

SA MCGEACHY AFFIDAVIT - 18
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

45.    Based on the foregoing, I believe there is probable cause that evidence, fruits, and instrumentalities of violations of 18 U.S.C. § 48 (Animal Crush Videos), are located in the SUBJECT DIGITAL DEVICES, as more fully described in Attachment A to this Affidavit.  I therefore request that the court issue a warrant authorizing a search of the SUBJECT DIGITAL DEVICES for the items more fully described in Attachment B and the seizure of any such items found therein.


_____
ERNEST MCGEACHY
Special Agent, HSI


SUBSCRIBED AND SWORN before me this 26 day October, 2018.


_____
HON. MARY ALICE THEILER
United States Magistrate Judge


SA MCGEACHY AFFIDAVIT - 19
USAO# 2018R01042

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

**ATTACHMENT A**
**Items To Be Searched**

2

3       a.    One Apple iPhone 7 with no visible model or serial number.  The phone is

4   dark gray/black in color.  At the time of seizure the phone was powered on.  The

5   screensaver for the phone was a picture of GRABOWSKY's "Cupidthedeer" fursona;

6



7

8

9

10

11

12

13

14

15

16

17       b.    One GoPro HERO 3 camera with no visible model or serial number.  The

18   camera is silver and black in color;

19



20

21

22

23

24

25

26

27

28

ATTACHMENT A - 1
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    c.    One Apple MacBook Pro laptop computer with model number A1181.  The
2  laptop is black in color.  The laptop has a sticker on the upper left corner on the outside
3  cover, and a sticker on the lower left inside corner;



14    d.    One Apple MacBook Pro laptop computer with model number A1297 and
15  serial number C02H80ENDV11.  The laptop is dark gray/black in color with silver on the
   bottom.  The laptop has a kittylovesmonster.com sticker located on the top (middle) of
16  the outside cover, a fuzz factory sticker on the outside cover, and a white Apple logo in
17  the center of the outside cover;



ATTACHMENT A - 2
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

e.       One Lenovo laptop computer with model number 20349 and serial number CB32133607.  The laptop is black in color.  The laptop has a sticker (paw print) on the upper left corner (outside cover), a sticker (animal) on the upper right corner (outside cover), and a blue piece of tape on the inside of the plastic case.  It appears the tape is covering a built-in camera.  The laptop also has a broken plastic case;



f.       One Apple iPad with Alaska Airlines tag # 352069071231533.  The Apple iPad is silver in color with a black outside cover.  The iPad has a black Apple logo on the back along with a sticker with MATTHEW GRABOWSKY's name.  There is also a sticker on the back that reads PROPERTY OF ALASKA AIRLINES;



ATTACHMENT A - 3
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      g.      One Apple iPhone 8 Plus with no visible model number.  The phone is dark
2  gray in color.



3
4
5
6
7
8
9
10
11
12
13
14      Items "a" – "f" were seized from the residence of MATTHEW GRABOWSKY on
November 2, 2017, during the execution of a King County Superior Court Search
15  Warrant.  These devices are currently held in evidence at RPD located at 1055 S. Grady
16  Way, Renton, WA 98057.

17      Item "g" was voluntarily provided by MATTHEW GRABOWSKY at the
18  conclusion of a proffer conducted in Seattle, WA, on August 31, 2018.  This device is
currently held in evidence by HSI Seattle, located at 1000 2nd Ave., Suite 2300, Seattle,
19  WA.

20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

### ATTACHMENT B
#### Items to be Seized

The following records, documents, files, or materials, in whatever form, including photographic form and electrical, electronic, and magnetic form that constitute evidence, instrumentalities, or fruits of violations of 18 U.S.C. § 48 (Animal Crush Videos), including but not limited to:

1.  Any visual depiction of animals being tortured, mutilated, or killed in any format or media;

2.  Any visual depiction of humans engaged in sexually explicit conduct with animals in any format or media;

3.  Any correspondence, to include stored texts, chats, e-mails, or other digital communication stored on the device, identifying persons transmitting animal crush videos, or evidencing the transmission of animal crush videos, through interstate or foreign commerce, including by mail or by computer;

4.  Assigned device name and/or number, and any identifying telephone serial number (ESN, MIN, IMSI, or IMEI);

5.  Stored list of recent received, sent, or missed calls;

6.  Stored contact information;

7.  Evidence of who used, owned or controlled the digital devices at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, saved user names and passwords, documents, and browsing history.

8   Evidence of malware that would allow others to control the digital devices such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malware; as well as evidence of the lack of such malware;

9.  Evidence of the attachment to the digital device(s) of other storage devices or similar containers for electronic evidence, and/or evidence that any of the digital devices were attached to any other digital device(s);

ATTACHMENT B - 1
USAO# 2016R00454

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1        10.    Evidence of counter-forensic programs (and associated data) that are

2  designed to eliminate data from a digital device;

3        11.    Evidence of the times each digital device was used;

4        12.    Any other ESI from the digital devices necessary to understand how each

5  digital device was used, the purpose of its use, who used it, and when;

6        13.    Records of Internet Protocol (IP) addresses used; and

7        14.    Records of Internet activity, including firewall logs, caches, browser history

8  and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered

9  into any Internet search engine, and records of user-typed web addresses.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT B - 2
USAO# 2016R00454